UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

_____

JERMAINE D. HUNTER,

        Plaintiff,                         Case No. 2:11-cv-296

v.                                            Honorable R. Allan Edgar

JO'LYNN CEBULA,

        Defendants.
_____/

**OPINION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. **The Court has granted Plaintiff leave to proceed *in forma pauperis*, and Plaintiff has paid the initial partial filing fee.** Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed for failure to state a claim.

**Factual Allegations**

Plaintiff Jermaine D. Hunter, a state prisoner currently confined at the Saginaw Correctional Facility, filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against Defendants Librarian Technician Jo'Lynn Cebula, Resident Unit Manager G. Pittman, and Warden Mitch Perry, all of whom were employed at the Newberry Correctional Facility (NCF) during the pertinent time period. Plaintiff alleges that on March 30, 2011, while he was confined at NCF, he attended his regularly scheduled law library session in the school building. Plaintiff states that the temperature in the law library was extremely cold and that when he inquired about it, a prisoner law clerk informed him that Defendant Cebula had the windows open and the fans on. Plaintiff asserts that it is Defendant Cebula's custom to keep the windows open and the fans on during law library sessions in order to distract prisoners from their research and to discourage them from attending law library.

Plaintiff asserts that it was so cold in the library that he was having difficulty concentrating. Plaintiff asked Defendant Cebula if she would shut the windows or at least turn the fans off, but she refused. Plaintiff noticed that Defendant Cebula was wearing a long-sleeved heavy sweater and asked if he could go back to his cell and get his coat. Defendant Cebula consented. When Plaintiff returned to the library with his coat, prisoner Robert Baker #182416 was complaining about the extremely cold temperatures. Prisoner Baker confronted Defendant Cebula and asked that she turn the fans off and close the windows, at which time Defendant Cebula agreed to comply with Baker's request. Plaintiff asserts that he is black and that Defendant Cebula and Prisoner Baker are white, so that the difference in treatment must have been racially motivated. Plaintiff also makes a conclusory assertion that other black prisoners requested that Defendant Cebula shut the window

and turn off the fans, but that she did not comply until asked by a white prisoner. However, Plaintiff fails to allege the identity of these prisoners or the specific time and date of such requests.

Plaintiff filed a grievance regarding the incident, which was denied by Defendant Pittman without an investigation being done. In the response to the grievance, Defendant Pittman stated:

> The opening and closing of windows by staff do [sic] not constitute any form of discrimination. No discriminatory statements were made by staff and the mere act of the timing of the window closure in no way would be evidence of discrimination by a reasonable person. Prisoner's claim is obtuse.

(Docket #1, p. 7, ¶ 37.)

Plaintiff filed an appeal of the denial of his grievance, which was responded to by Defendant Perry. In the step II grievance response, Defendant Perry states:

> You claim that on March 30, 2011 Library Tech. J. Cebula discriminated against you by denying your request to have the window in the library closed, and then closed the window upon the request of a prisoner who is white. You request to have Ms. Cebula disciplined for attempting to freeze prisoners out of their law library use. In the appeal you allege that the Response appears to condone and justify the discriminatory acts, by ignoring the act of allowing you to be cold, while in the same breath, accommodating the white prisoner who claimed to be cold. The Respondent violated policy by failing to thoroughly investigate the incident. You request to have the listed witnesses contacted.
>
> The Respondent, [Resident Unit Manager] G. Pittman, found that the opening and closing of windows by staff does not constitute any form of discrimination. No discriminating comments were made, and the mere timing of the window closure would in no way be evidence of discrimination by a reasonable person.
>
> Library Tech. J. Cebula was contacted and stated that at no time would an individual's race factor into her decision on whether a window would be left open and / or closed. I cannot find that Ms. Cebula "wanted you to be cold," as she authorized you to return to your housing unit to retrieve your coat. The fact that the window was eventually closed does not in and of itself substantiate your claim of discrimination. It is determined at this level that the response provided at Step I has adequately addressed the issue presented; therefore, your Step II appeal is denied.

(Docket #1, Plaintiff's Exhibit #4.) The denial of Plaintiff's step II appeal was upheld at step III. (Docket #1, Plaintiff's Exhibit #5.)

Plaintiff claims that Defendants' conduct constituted racial discrimination and deliberate indifference in violation of the First, Fifth, Eighth and Fourteenth Amendments. In addition, Plaintiff claims that Defendants' conduct violated his rights under state law. Plaintiff seeks compensatory and punitive damages, as well as equitable relief.

### Discussion

I. Failure to state a claim

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]'

– that the pleader is entitled to relief." *Iqbal*, 129 S. Ct. at 1950 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

As noted above, Plaintiff claims that Defendants discriminated against him on the basis of his race. The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. CONST., amend. XIV; *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985). When a law adversely impacts a "suspect class" such as one defined by race, alienage, or national origin, or invades a "fundamental right" such as speech or religious freedom, the rigorous "strict scrutiny" standard ordinarily governs, whereby such laws "will be sustained only if they are suitably tailored to serve a compelling state interest." *City of Cleburne*, 473 U.S. at 440. However, while a convicted prisoner does not forfeit all constitutional protections by virtue of his confinement, "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights . . . ." *Price v. Johnston*, 334 U.S. 266, 285 (1948). "The limitations on the exercise of constitutional

rights arise both from the fact of incarceration and from valid penological objectives – including deterrence of crime, rehabilitation of prisoners, and institutional security." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987) (citing, *inter alia*, *Turner v. Safley*, 482 U.S. 78, 84 (1987)).

To establish a violation of the Equal Protection Clause, an inmate must show that the defendants purposefully discriminated against him. *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265 (1977). Such discriminatory purpose must be a motivating factor in the actions of the defendants. *Id.* at 265-66. In this case, Plaintiff alleges that he asked Defendant Cebula if she would close the windows and turn off the fans, but she refused. Later the same day, Defendant Cebula agreed to close the windows after being asked by a white prisoner. However, Plaintiff concedes that Defendant Cebula let him go get his coat, so that he would not be cold. The fact that Defendant Cebula agreed to close the windows later in the afternoon could merely have been because she began to feel cold at that point, or because repeated requests by prisoners convinced her to reconsider her earlier refusal to close the windows. Because Plaintiff's allegations do not show that Defendant Cebula's conduct was motivated by a discriminatory intent, his equal protection claim against Defendant Cebula is properly dismissed. Moreover, because Plaintiff's equal protection claim against Defendant Cebula lacks merit, Plaintiff's equal protection claims against Defendants Pittman and Perry for failing to properly investigate the incident or take corrective action will also be dismissed.

Plaintiff also claims that Defendants' conduct constituted deliberate indifference in violation of the Eighth Amendment. The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337,

345-46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to inmate health or safety." *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)). Plaintiff's claim that he was cold during law library and had to go get his coat in order to be comfortable does not rise to the level of an Eighth Amendment violation.

Plaintiff appears to be claiming that because Defendant Pittman did not investigate his grievance thoroughly, he was denied due process. Plaintiff has no due process right to file a prison grievance. The Sixth Circuit and other circuit courts have held that there is no constitutionally protected due process right to an effective prison grievance procedure. *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Young v. Gundy,* 30 F. App'x 568, 569-70 (6th Cir.

2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir.1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994). Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Because Plaintiff has no liberty interest in the grievance process, Defendant Pittman's conduct did not deprive him of due process.

Plaintiff appears to be claiming that Defendants' conduct violated his First Amendment right of access to the courts. In *Bounds v. Smith*, 430 U.S. 817 (1977), the Supreme Court recognized a prisoner's fundamental right of access to the courts. While the right of access to the courts does not allow a State to prevent an inmate from bringing a grievance to court, it also does not require the State to enable a prisoner to discover grievances or litigate effectively. *Lewis v. Casey*, 518 U.S. 343 (1996). Thus, *Bounds* did not create an abstract, free-standing right to a law library, litigation tools, or legal assistance. *Id.* at 351 (1996). Further, the right may be limited by legitimate penological goals, such as maintaining security and preventing fire or sanitation hazards. *See Acord v. Brown*, No. 91-1865, 1992 WL 58975 (6th Cir. March 26, 1992); *Hadix v. Johnson*, No. 86-1701, 1988 WL 24204 (6th Cir. March 17, 1988); *Wagner v. Rees*, No. 85-5637, 1985 WL 14025 (6th Cir. Nov. 8, 1985).

To state a claim, an inmate must show that any shortcomings in the library, litigation tools, or legal assistance caused actual injury in his pursuit of a legal claim. *Lewis*, 518 U.S. at 351; *Talley-Bey*, 168 F.3d at 886; *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996); *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996); *Walker v. Mintzes*, 771 F.2d 920, 932 (6th Cir. 1985). An inmate must make a specific claim that he was adversely affected or that the litigation was prejudiced.

*Vandiver v. Niemi*, No. 94-1642, 1994 WL 677685, at *1 (6th Cir. Dec. 2, 1994). Particularly, an inmate cannot show injury when he still has access to his legal materials by request, *Kensu*, 87 F.3d at 175, when he fails to state how he is unable to replicate the confiscated documents, *Vandiver*, 1994 WL 677685, at *1, or when he could have received the material by complying with the limits on property, e.g., where he had the opportunity to select the items that he wanted to keep in his cell, or when he had an opportunity to purchase a new footlocker that could hold the property. *Carlton v. Fassbender*, No. 93-1116, 1993 WL 241459, at *2 (6th Cir. July 1, 1993). In this case, Plaintiff fails to allege that he suffered any actual injury in his pursuit of a non-frivolous claim as a result of Defendants' actions. Therefore, his First Amendment claim is properly dismissed.

Finally, the court notes that Section 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). Plaintiff's challenge to the enforcement of state law therefore fails to state a claim under § 1983. Moreover, to the extent that Plaintiff seeks to invoke this Court's supplemental jurisdiction over the state-law claim, the Court declines to exercise jurisdiction. The Sixth Circuit routinely has held that, where a district court has exercised jurisdiction over a state-law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the state-law claims should be dismissed without reaching their merits. *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993); *Faughender v. City of N. Olmsted, Ohio*, 927 F.2d 909, 917 (6th Cir. 1991)). Plaintiff's state-law claim therefore will be dismissed without prejudice.

**Conclusion**

Having conducted the review now required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $455.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $455.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.


Dated: 10/31/2011    */s/ R. Allan Edgar*
R. Allan Edgar
United States District Judge